AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | **FILED** |
| Black/grey Apple iPhone with IMEI # ) <br> 356727087844443; Black Samsung SM-J337P ) <br> cellphone with DEC # 089189376902627335; and a ) <br> Red/black Ferrari Motorola cellphone with IMEI # ) <br> 102100329867020, CURRENTLY LOCATED AT ) <br> 4328 Watt Avenue, Sacramento, California ) | Jan 10, 2022 <br> CLERK, U.S. DISTRICT COURT <br> EASTERN DISTRICT OF CALIFORNIA |

Case No.  2:22-sw-0021 JDP

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and § 846 | Conspiracy to distribute, distribution, manufacture, and possession with intent to distribute a controlled substance |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking offense |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/ Brian Nehring_____
*Applicant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed telephonically.

Date:  January 10, 2022 3:25 p.m.

_____
*Judge's signature*

City and state:  Sacramento, California

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

1  PHILLIP A. TALBERT
   United States Attorney
2  CAMERON L. DESMOND
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11 | In the Matter of the Search of:                | CASE NO.
12 | Black/grey Apple iPhone with IMEI #             | AFFIDAVIT IN SUPPORT OF AN APPLICATION
   | 356727087844443;                               | UNDER RULE 41 FOR A WARRANT TO
13 |                                                | SEARCH DEVICES
14 | Black Samsung SM-J337P cellphone with DEC      |
   | # 089189376902627335; and                      |
15 |                                                |
   | Red/black Ferrari Motorola cellphone with      |
16 | IMEI # 102100329867020, CURRENTLY              |
   | LOCATED AT 4328 Watt Avenue,                    |
17 | Sacramento, California                          |

18

19       1.     I, Brian Nehring, being first duly sworn, hereby depose and state as follows:

20              I.      **INTRODUCTION AND AGENT BACKGROUND**

21       2.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of

22 Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—

23 that are currently in law enforcement possession, and the extraction from that property of electronically

24 stored information described in Attachment B.

25       3.     I am a Special Agent with the DEA, and have been since 1991.  I have had numerous

26 assignments since beginning with DEA, including being assigned to the San Francisco Division Office

27 between 1991 and 1994, the Alameda County Narcotics Task Force between 1995 and 1996, the San

28 Francisco Division Clandestine Laboratory Enforcement Team from 1997 to 1999, the Oakland

Resident Office between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002 and 2004.  I have been assigned to the Sacramento Division Office since September of 2004.

4.      I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the Drug Enforcement Administration (DEA).  In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia.  In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

5.      I have assisted in the execution of more than four hundred (400) warrants to search particular places or premises for controlled substances and/or related paraphernalia, indicia and other evidence of violations of federal drug narcotics statutes.  As a result, I have encountered and become familiar with various tools, methods, trends, and paraphernalia and related articles used by traffickers in their efforts to import, conceal, manufacture and distribute controlled substances.  Central to all trafficking efforts, regardless of the drug, is the traffickers' effort to make a profit from those dealings or transactions, either for the purchase of additional substances or material gain.  I have been actively involved as case agent in excess of two hundred (200) investigations and have talked with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions.

6.      I have been qualified as and have testified as an expert witness in both federal and state court in the Northern and Eastern Districts of California and in counties including Alameda, Contra Costa, Solano, Sacramento and others.  These areas of qualification have included possession for sale, possession with intent to distribute, manufacturing of a controlled substance and cultivation.

7.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.      IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8.      The properties to be searched are: black/grey Apple iPhone with IMEI # 356727087844443, a  Black Samsung SM-J337P cellphone with DEC # 089189376902627335; and a red/black Ferrari Motorola cellphone with IMEI # 102100329867020, hereinafter the "Devices."  The Devices are currently located at the DEA Office at 4328 Watt Avenue, Sacramento, California.

9.       The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

### III.       PROBABLE CAUSE

10.       In October 2018, I received information that Fidel GOMEZ Jr. was engaged in the ongoing possession and distribution of large amounts of methamphetamine.  An individual I believe based upon the verification of his/her information and assistance described below to be a reliable confidential source told me that GOMEZ Jr. sourced his/her methamphetamine in 2017 and 2018 and stored methamphetamine and marijuana at a property located at 12989 Diamond Lane, Lodi, California.  *See* Attachment 1, Search Warrant Affidavit, 18-SW-0889, incorporated herein.  I also learned that GOMEZ Jr. was operating multiple marijuana cultivation sites on properties he owned or controlled throughout San Joaquin and Calaveras Counties to include this property.  I learned that GOMEZ's wife, Miriam Gomez, was the listed owner of the property at 12989 Diamond Lane, Lodi, California and that they jointly owned their listed residence at 3522 E. Barron Road, Acampo, California.

11.       In October 2018, agents conducted aerial surveillance of two rural properties GOMEZ purchased in Calaveras County in 2017 and observed and recorded large apparent marijuana cultivation operations currently occurring on these properties. Agents also observed and documented apparent large marijuana cultivation operations on two properties in Acampo originally purchased by GOMEZ and recently deeded to his wife which were in close proximity to their residence.

12.       A federal search warrant was authorized by the Honorable Magistrate Judge Edmund F. Brennan on October 31, 2018 authorizing the search of 12989 Diamond Lane, Lodi, California, GOMEZ's residence at 3522 E. Barron Road, Acampo, California and four additional properties.

13.       On November 1, 2018, agents served the initial search warrant at 12989 Diamond Lane, Lodi, California.  Inside the warehouse at this location agents located an extensive indoor marijuana cultivation operation with a total of 898 rooted marijuana plants under approximately 100 lights and ballasts.

14.       Agents also located a travel trailer along the side of the warehouse containing this grow operation.  This same trailer had previously been searched incident to a federal search warrant executed

/ / /

1   in Walnut Grove, California on October 18, 2018, at which time over a 1000 gross grams of

2   methamphetamine had been seized within the trailer.

3        15.   Following the securing and processing of this property, agents executed the search

4   warrant at 3522 E. Barron Road, Acampo, California.  GOMEZ, his wife, and his daughter were located

5   inside the residence.

6        16.   During a search of the detached garage at the rear of the residence, agents located a 2017

7   Chevrolet Corvette registered to GOMEZ along with a large amount of indoor marijuana cultivation

8   equipment to include lights, ballasts, fans, and growing mediums.  Agents located five large garbage

9   bags which in total contained approximately 95 individual large plastic knotted bags believed to each

10  contain approximately a pound of manicured marijuana bud material.  In the same area agents located an

11  additional five garbage bags containing approximately 110 pounds of marijuana leaf and bud material on

12  the stem which had yet to be manicured.  In the same area as this marijuana, agents located a .22 caliber

13  Winchester rifle.

14       17.   GOMEZ was read his *Miranda* rights by DEA Special Agent Max Laschuk.  GOMEZ

15  told SA Laschuk that there was a loaded pistol in his room and that he was in the process of manicuring

16  a large amount of marijuana in his garage.

17       18.   GOMEZ directed agents to unlocked handgun box on top of a dresser surrounded by

18  male clothes.  Inside the box was a 5.7 caliber FNH handgun.  Agents also found $12,878.00 U.S.C.  In

19  the master bedroom, inside a nightstand's top drawer, agents found numerous indicia in GOMEZ Jr.'s

20  name.  In the same drawer, agents found a 50-cartridge box of 5.7 caliber FNH ammunition and the

21  three Devices.  Agents seized the drugs, firearms, indicia, currency, ammunition, and cellphones

22  pursuant to the search warrant.   SA Lashchuk seized a black/grey Apple iPhone with IMEI #

23  356727087844443, a  Black Samsung SM-J337P cellphone with DEC # 089189376902627335 and a

24  red/black Ferrari Motorola cellphone with IMEI # 102100329867020, from GOMEZ's nightstand with

25  the money, indicia, firearms and ammunition.

26       19.   GOMEZ Jr. was indicted on November 15, 2018 on three Title 21 drug trafficking

27  charges and one Title 18 possession of a firearm in furtherance of drug trafficking charge.  Case No.

28  2:18-cr-00233-WBS.  The case is currently set for a jury trial to begin on March 8, 2022.

20.     It has been my experience in the past, and particularly in this case, that when suspects use mobile telephones to communicate with co-conspirators to set up the drug deals or to coordinate logistics of a manufacturing or grow operation, records relating to these activities will be found stored in the cellular telephone.

21.     I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message.  Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones.  Mobile telephones also contain in their memory a telephone book.  This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.  Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user.  The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate.  Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer.  Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity.  Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

22.     The Devices were seized pursuant to a search warrant and are currently in the lawful possession of the DEA.  Therefore, while the DEA might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

1

### IV.   **TECHNICAL TERMS**

2   23.   Based on my training and experience, I use the following technical terms to convey the

3   following meanings:

4   a)   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is

5   a handheld wireless device used for voice and data communication through radio signals.

6   These telephones send signals through networks of transmitter/receivers, enabling

7   communication with other wireless telephones or traditional "land line" telephones.  A

8   wireless telephone usually contains a "call log," which records the telephone number,

9   date, and time of calls made to and from the phone.  In addition to enabling voice

10   communications, wireless telephones offer a broad range of capabilities.  These

11   capabilities include: storing names and phone numbers in electronic "address books;"

12   sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and

13   storing still photographs and moving video; storing and playing back audio files; storing

14   dates, appointments, and other information on personal calendars; and accessing and

15   downloading information from the Internet.  Wireless telephones may also include global

16   positioning system ("GPS") technology for determining the location of the device.

17   b)   Digital camera:  A digital camera is a camera that records pictures as digital picture files,

18   rather than by using photographic film.  Digital cameras use a variety of fixed and

19   removable storage media to store their recorded images.  Images can usually be retrieved

20   by connecting the camera to a computer or by connecting the removable storage medium

21   to a separate reader.  Removable storage media include various types of flash memory

22   cards or miniature hard drives.  Most digital cameras also include a screen for viewing

23   the stored images.  This storage media can contain any digital data, including data

24   unrelated to photographs or videos.

25   c)   Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld

26   digital storage device designed primarily to store and play audio, video, or photographic

27   files.  However, a portable media player can also store other digital data.  Some portable

28   media players can use removable storage media.  Removable storage media include

various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)   GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)   PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

///

f)    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.    Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

26.    Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a)    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

/ / /

d)   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)   Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.   <u>Nature of examination.</u>  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.   <u>Manner of execution.</u>  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# VI.    **CONCLUSION**

29.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Brian Nehring
_____
Brian Nehring
Special Agent
DEA

Subscribed and sworn to before me telephonically on:    January 10, 2022 3:25 p.m.

_____
The Honorable Jeremy D. Peterson
UNITED STATES MAGISTRATE JUDGE

_____
Approved as to form by AUSA CAMERON L. DESMOND

## ATTACHMENT A

The properties to be searched are a Black/grey Apple iPhone with IMEI # 356727087844443; Black Samsung SM-J337P cellphone with DEC # 089189376902627335; and a Red/black Ferrari Motorola cellphone with IMEI # 102100329867020.  The Devices are currently located at 4328 Watt Avenue, Sacramento, California.

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §841(a)(1) and 846 and involve Fidel Gomez Jr., between January 1, 2017 and November 2, 2018, including:

    a. All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with GOMEZ Jr. during execution of the warrant.

    b. lists of customers and related identifying information;

    c. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    d. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    e. any information recording GOMEZ Jr.'s schedule or travel from January 1, 2017 to November 2, 2018;

    f. all bank records, checks, credit card bills, account information, and other financial records.

    g. Incoming call history;

    h. Outgoing call history;

    i. Missed call history;

    j. Outgoing text messages;

    k. Incoming text messages;

    l. Draft text messages;

    m. Telephone book;

    n. Data screen or file identifying the telephone number associated with the mobile telephone searched;

    o. Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

    p. Voicemail;

q.  User-entered messages (such as to-do lists);

r.  Photographs;

s.  Any passwords used to access the electronic data described above; and

t.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

# ATTACHMENT 1

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of

| | |
|---|---|
| The property located at 12989 E. Diamond Lane, Lodi, California;  APN San Joaquin County #065-030-02; | ) |
| The property located at 3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31; | ) ) ) |
| The property located at 25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38; | ) ) |
| The property located at 4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007; | ) ) ) |
| The property located at 608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039); | ) ) ) |
| The property located at 2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012; | ) ) ) |
| A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California; and | ) |
| The person of Fidel GOMEZ Jr., DOB: **-**-1976, California Driver's License #****9930 | |

Case No. **2: 1 8 - SW - 0 8 8 9**   **EFB**

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____November 14, 2018_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken. [*continued on next page*]

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐   for _____ days *(not to exceed 30)*   ☐   until, the facts justifying, the later specific date of _____ .

Date and time issued:   10-31-2018
                        at 11:45 A.M.                                  _____
                                                                              *Judge's signature*

City and state:       Sacramento, California              _____ Edmund F. Brennan, U.S. Magistrate Judge
                                                                  *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                              Date

**Attachment A**
**Locations to be Searched**

1.   **12989 E. Diamond Lane, Lodi, California;  APN San Joaquin County #065-030-02, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

2.   **3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

1

3.  **25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

4.  **4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

5.   **608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

6.   **2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

7.    A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California  (PROPERTY 1), photograph below:



8.    The person of Fidel GOMEZ Jr., DOB: **-**-1976, California Driver's License #****9930;



**Attachment B**
**Items to be Seized**

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by GOMEZ and his co-conspirators:

- Title 21 U.S.C. Sections 846 and 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Marijuana.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1. Controlled substances, methamphetamine and marijuana, or items frequently used to distribute methamphetamine and marijuana, or items containing residue from the distribution of methamphetamine and marijuana; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine and marijuana, from GOMEZ during in this investigation;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1);

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.      Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.      Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.      Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.     Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances;

11.     Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records; and

12.     All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with GOMEZ during execution of the warrant.  This authority to search such mobile telephones includes the following within each mobile telephone:

A.      Incoming call history;
B.      Outgoing call history;
C.      Missed call history;
D.      Outgoing text messages;
E.      Incoming text messages;
F.      Draft text messages;
G.      Telephone book;
H.      Data screen or file identifying the telephone number associated with the mobile telephone searched;
I.      Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
J.      Voicemail;
K.      User-entered messages (such as to-do lists);
L.      Photographs; and
M.      Any passwords used to access the electronic data described above.

13. All bulk marijuana located on the scene may be destroyed except for representative samples taken in accordance with normal DEA policy.

**ORIGINAL FILED**

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

OCT 3 1 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| In the Matter of the Search of<br>The property located at 12989 E. Diamond Lane, Lodi, California;  APN San Joaquin County #065-030-02; | ) | Case No.   2 1 8 - SW - 0 8 8 9     EFB |
| The property located at 3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31; | ) ) ) | |
| The property located at 25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38; | ) ) ) | |
| The property located at 4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007; | ) ) ) | |
| The property located at 608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039); | ) ) ) | |
| The property located at 2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012; | ) ) ) ) | |
| A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California; and | ) ) ) | |
| The person of Fidel GOMEZ Jr., DOB: **-**-1976, California Driver's License #****9930 | | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of: [*continued on next page*]

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Distribution, Possession with Intent to Distribute, and Conspiracy to Distribute Methamphetamine and Marijuana |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brian Nehring, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10 31—2018

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Brian Nehring of the DEA, being duly sworn, depose and state
as follows:

### Background and Expertise

1. I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco
   Field Division, and have been so employed since 1991. I have had numerous
   assignments since beginning with DEA, including being assigned to the Clandestine
   Laboratory Enforcement Team from 1997 to 1999, the Oakland Resident Office
   between 1999 and 2002, and the Mobile Enforcement Team (MET) between 2002
   and 2004. I have been assigned to the Sacramento Division Office since September
   of 2004.

2. I have received specialized training in narcotic investigation matters including, but
   not limited to, drug interdiction, drug detection, money laundering techniques and
   schemes, drug identification, and asset identification and removal, from the Drug
   Enforcement Administration (DEA). In addition, I graduated from the DEA Basic
   Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received
   in excess of 500 hours of comprehensive formalized classroom instruction in those
   areas outlined above.

3. I have assisted in the execution of more than four hundred (400) warrants to search
   particular places or premises for controlled substances and/or related paraphernalia,
   indicia and other evidence of violations of federal drug narcotics statutes. As a result,
   I have encountered and become familiar with various tools, methods, trends, and
   paraphernalia and related articles utilized by traffickers in their efforts to import,
   conceal, manufacture and distribute controlled substances. Central to all trafficking
   efforts, regardless of the drug, is the traffickers' effort to make a profit from those
   dealings or transactions, either for the purchase of additional substances or material
   gain. I have been actively involved as case agent in excess of two hundred (200)
   investigations and have talked with confidential informants involved in the trafficking
   of narcotics, and this has formed the basis of my opinions.

4. I have been qualified as and have testified as an expert witness in both federal and
   state court in the Northern and Eastern Districts of California and in counties
   including Alameda, Contra Costa, Solano, Sacramento and others. These areas of
   qualification have included possession for sale, possession with intent to distribute,
   manufacturing of a controlled substance and cultivation.

## Scope of Requested Search Warrant

5.  This Affidavit is submitted in support of a search warrant to search the following locations:

    1.  **12989 E. Diamond Lane, Lodi, California;  APN San Joaquin County #065-030-02 (PROPERTY 1);**

    2.  **3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31 (PROPERTY 2);**

    3.  **25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38 (PROPERTY 3);**

    4.  **4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007 (PROPERTY 4);**

    5.  **608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039 (PROPERTY 5);**

    6.  **2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012 (PROPERTY 6);**

    7.  **A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California; and**

    8.  **The person of Fidel GOMEZ Jr., DOB: \*\*-\*\*-1976, California Driver's License #\*\*\*\*9930;**

6.  I believe that Fidel GOMEZ Jr. is a large-scale methamphetamine and marijuana trafficker currently operating within the Eastern District of California.  Based upon the ongoing federal investigation detailed below, I believe that GOMEZ has been using the properties he and his wife, Miriam GOMEZ, own as sites to store large amounts of methamphetamine for distribution and as a location to grow, process, store, and distribute large amounts of marijuana.  This Affidavit therefore requests authority to search the locations described in Attachment A in order to located and seize the items described in Attachment B as evidence and instrumentalities of violations of 21 U.S.C.  § 841(a)(1) (distribution or and possession with intent to distribute methamphetamine and marijuana), and 21 U.S.C. §§ 846 and 841(a)(1) (conspiracy to distribute and possess with intent to distribute methamphetamine and marijuana).

2

## Probable Cause

*Background*

7. On October 18, 2018, I spoke with a Confidential Source, hereinafter referred to as the CS, regarding the methamphetamine and marijuana trafficking activities of an individual identified as Jose TEJEDA-GUTIERREZ.

8. At this time, the CS was providing me with information in hopes of receiving consideration in a pending federal narcotics case. The CS has an extensive criminal history, including felony convictions for Possession of a Controlled Substance for Sale, Felon in Possession of a Firearm, and other offenses. The CS has in the past provided other law enforcement officers with whom I am associated and have spoken with information and assistance when he/she had a particular pending stated drug case, not the current federal case. The CS's information and assistance was previously independently corroborated in the prior drug investigations, although I do not believe it led to a conviction. Neither I nor the prior officers found the CS to be false or misleading, and the CS's descriptions of drug and drug dealing have been entirely consistent with my own training and experience in this area. For these reasons, I consider the CS reliable.

9. The CS related that he/she had been obtaining multiple pounds of methamphetamine during 2017 and 2018, including a large amount of methamphetamine he/she directed agents to at the time of his/her arrest in October 2018. The CS also admitted to having sold large amounts of heroin and marijuana during this same time period.

10. The CS related that in addition to obtaining and selling multiple pounds of methamphetamine, he/she also routinely engaged in burglaries of other drug dealers in order to steal large amounts of methamphetamine and marijuana.

11. The CS related that one of his/her multiple pound methamphetamine sources was a particular identified individual he/she had known for many years in Lodi, California named Fidel GOMEZ, also known as "Junior." The CS subsequently identified a California Driver's License (#****9930) photograph of Fidel GOMEZ Jr. as this person. The CS stated that GOMEZ's wife was named Miriam (GOMEZ) and that they lived at a house near Liberty Road in Acampo, California next to Highway 99. This property was identified from property records as **3522 E. Barron Road, Lodi, California, APN San Joaquin County #005-100-31 (PROPERTY 2)**, which was listed as owned by both Miriam and Fidel GOMEZ Jr. and is their current listed resident address with DMV where they have numerous vehicles registered.

3

12. The CS further related that between GOMEZ and his wife, they owned numerous properties where they grew large amounts of marijuana. The CS also stated that he/she had obtained multiple pound quantities of methamphetamine supplied by GOMEZ several times in 2017 and 2018, as recently as within the last few weeks. The CS stated that when he/she was supplied with methamphetamine by GOMEZ, the transaction occurred at or near a rural property GOMEZ owned in his wife's name located at the end of a dirt road off Harney Road east of Lodi, California. The CS subsequently identified this property from satellite imagery as **12989 E. Diamond Lane, Lodi, California; APN San Joaquin County #065-030-02 (PROPERTY 1)**. The CS related that GOMEZ had removed large amounts of methamphetamine from a large metal warehouse type structure located on the property several times, which methamphetamine the CS purchased. The CS stated that he/she also knew this was also the location where GOMEZ normally stored his harvested and manicured marijuana (in addition to methamphetamine), because it was very remote, was accessed by a locked gate at the end of a long dirt road, and was not known to many individuals. The CS stated that there were also supposedly marijuana grow rooms within this same structure.

13. In the recent past, and specifically during the last methamphetamine transaction, an individual was present at the property at **12989 E. Diamond Lane, Lodi, California (PROPERTY 1)** whom GOMEZ told the CS was one of his sources of supply for methamphetamine. This individual, subsequently identified by the CS from a California Driver's License photograph as Jose TEJEDA-GUTIERREZ, had been present at the property during the transaction with the CS. The CS stated that GOMEZ had other drug sources in addition to TEJEDA-GUTIERREZ but that GOMEZ was willing to sell whatever drugs TEJEDA-GUTIERREZ could supply at any given time.

14. The CS's associates who arranged the transactions with GOMEZ also related that TEJEDA-GUTIERREZ owned many properties, including a property in Walnut Grove, California where he grew large amounts of marijuana. The CS was informed that TEJEDA-GUTIERREZ actually lived on the property with his wife and children, subsequently identified as 501 W. Walker Landing Road, Walnut Grove, California, Sacramento County APN#142-0110-007, a 25 acre rural property.

15. The CS was told by his/her mutual associates with GOMEZ and TEJEDA-GUTIERREZ that TEJEDA-GUTIERREZ currently had many outdoor marijuana plants on this property and had begun harvesting and drying multiple hundred pounds of marijuana in a large barn on the property.

4

16. The CS stated that within the last couple of weeks, he/she had been informed by his/her associates that TEJEDA-GUTIERREZ currently possessed two hundred pounds of methamphetamine on this same property, which had been sent to him from Mexico. The CS had been informed that this methamphetamine was located in a trailer directly behind the house at the front of the property. The CS was directed to the property and the trailer so the CS could reconnoiter and develop a plan to rob TEJEDA-GUTIERREZ of the methamphetamine. The CS further related that he/she had researched properties owned by GOMEZ and his wife, Miriam GOMEZ, and had recently traveled to those locations and observed marijuana, as he/she had planned on robbing those properties concurrently.

17. The CS related that he/she believed that TEJEDA-GUTIERREZ's property would most likely be burglarized and that based upon his/her associates clear intent, TEJEDA-GUTIERREZ would be robbed whether the CS participated or not. The CS related that this robbery was supposed to occur as soon as possible, as TEJEDA-GUTIERREZ had agreed to give this methamphetamine to GOMEZ because GOMEZ was one of the few individuals who could sell that volume of methamphetamine. The CS was also advised that the trailer containing the methamphetamine had been at TEJEDA-GUTIERREZ's property for some time and was supposed to be transported any day to GOMEZ's rural property at **12989 E. Diamond Lane, Lodi, California (PROPERTY 1)**, where the methamphetamine would be unloaded from the trailer at that location.

18. On October 18, 2018, the CS accompanied agents and pointed out the property located at 501 W. Walker Landing Road, Walnut Grove, California as TEJEDA-GUTIERREZ's property. The CS pointed out the trailer behind the main house at the front of the property where he/she had been directed to the methamphetamine. The CS also pointed out the large barn at the rear of the property where the marijuana was supposedly hanging and drying. While traveling down this rural road, which was located in a delta area that dead-ended at a river, and particularly when directly in front of this property, I could clearly smell the strong redolent odor of marijuana emanating from the property. That same day, agents conducting aerial surveillance observed large outdoor grow houses with apparent marijuana in them and apparent marijuana inside the barn.

19. Sacramento County property records indicated that Jose TEJEDA-GUTIERREZ (date of birth **-**-1978, California Driver's License #****4161) and his spouse, Miriam OROPEZA, were the listed owners of 501 W. Walker Landing Road, Walnut Grove, California, a 25-acre property with a corresponding APN of 142-0110-007. As stated

above, the CS identified a DMV driver's license photograph of TEJEDA-GUTIERREZ.

20. On October 18, 2018, the Honorable Magistrate Judge Deborah Barnes issued a search warrant for 501 W. Walker Landing Road, Walnut Grove, California, Sacramento County APN#142-0110-007 (TEJEDA-GUTIERREZ's property).

21. That same day, agents executed this search warrant. At the time of the service of the search warrant, numerous individuals observed near the cultivation operation at the rear of the property fled into the surrounding rural area and fields. It was determined that the entire property was converted to a marijuana cultivation operation with outdoor greenhouses filled with hundreds of marijuana plants. The barn was filled with hundreds of pounds of hanging and drying marijuana plants, and various locations throughout the property (including the main residence at the front of the property) were being used as manicuring and bagging sites. A hydraulic press at the front residence was being used to manufacture THC/BHO products.

22. During a search of the North Trail Trailer directly behind the main residence, agents located over 1000 gross grams of a white crystalline substance which was believed to be methamphetamine in Tupperware containers next to a digital scale and open boxes of sandwich bags in a cupboard above the stove. This substance presumptive tested positive for the presence of methamphetamine. During the search of the trailer, agents located stacks of newly purchased, un-opened Tupperware-type plastic containers still in their packaging and large rolls of clear plastic wrapping as though a much large amount of methamphetamine (multiple kilograms) were about to be packaged. Agents also located a Mexican Passport. The narcotics detection canine present at the time alerted to the floor area near the bathroom at the front of the trailer and beneath the trailer in several locations including near the gray water tank near the bathroom. The following is a picture of this trailer:



23. Shortly after the property was secured, OROPEZA (TEJEDA-GUTIERREZ's wife) arrived in a 2015 Cadillac XTS 4-door sedan.  OROPEZA identified herself as the co-owner of the property with her husband who worked independently in construction, although she related she was aware her husband was operating the marijuana cultivation operation on the property and was employing numerous individuals. OROPEZA related that her husband had purchased the Cadillac XTS for her a few weeks prior.  This was verified through receipts as having been purchased by and registered to GUTIERREZ in early October 2018.  OROPEZA initially stated that the trailer next to the residence had been there when they had purchased the residence and that they did not access it, but later admitted that her husband had accessed the trailer and had placed her luggage inside.

24. During a search of the residence, agents located paperwork and indicia in the name of GUTIERREZ and OROPEZA throughout, including joint tax returns showing they claimed an income of $9000.00 in 2017.  They also located the purchase paperwork for the property in July of 2017 showing they purchased the property for $580,995.00 and placed approximately $400,000.00 down in cashiers' checks and claimed to have received a personal loan for the remainder from the sellers.  Agents also located $3000.00 in US Currency in the pocket of a man's jacket hanging in the master bedroom closet near GUTIERREZ's indicia, pistol ammunition, and a notebook with handwritten names and apparent numbers for "libras" (Spanish for pounds).  During the continued search of the residence, agents accessed a cabinet which contained a loaded high-capacity rifle magazine as well as a black plastic shopping bag

7

containing multiple clear plastic knotted bags containing several pounds of a white crystalline substance suspected to be methamphetamine.

25. Following the execution of the search warrant at the Walnut Grove, California property, I conducted additional property records inquiries with regards to GOMEZ. I learned that in addition to the property at **12989 E. Diamond Lane, Lodi, California (PROPERTY 1)** that was purchased in the name of Miriam GOMEZ in 2014 and their residence at **3522 E. Barron Road, Acampo, California (PROPERTY 2)** which they had co-owned for several years (in addition to 26378 N. Highway 99, Acampo, California which appeared to be a parcel bordering and connected to the same residence), Fidel GOMEZ Jr. had purchased several properties over the years and had subsequently deeded some of these to his wife Miriam who was still listed as the current owner. I noted that Fidel GOMEZ Jr. had been the listed owner of **4009 E. Emerson Road, Acampo, California (PROPERTY 4)** until he had deeded this property into his wife's name in 2013 and **25512 N. Highway 99, Acampo, California (PROPERTY 3)** until he had deeded this property into his wife's name in 2009. I further noted that GOMEZ had in 2017 purchased two rural multi-acre properties in Calaveras County for "cash" per property records: **608 Smitty Lane, West Point, California (PROPERTY 5)** and **2820 Liberty Hill Road, Mokelumne Hill, California (PROPERTY 6)**.

26. I examined satellite imagery of these properties which was commercially available and it was apparent to me that in the past, the properties at **4009 E. Emerson Road, Acampo, California (PROPERTY 4)**, **25512 N. Highway 99, Acampo, California (PROPERTY 3)**, **608 Smitty Lane, West Point, California (PROPERTY 5)**, and **2820 Liberty Hill Road, Mokelumne Hill, California (PROPERTY 6)** had obvious signs of large-scale marijuana cultivation operations visible to include numerous rows of apparent outdoor marijuana plants and grow house structures. I also noted that the property on **E. Emerson Road (PROPERTY 4)** corresponded closely to where the CS had stated that he/she had located plants on a property owned by GOMEZ which he/she planned to rob.

27. On October 26, 2018, DEA SAs Mel Sinoben and Matt Chance conducted aerial surveillance of several of these properties and took numerous photographs and video. Agents observed and documented apparent ongoing marijuana grows on these properties to include staked and supported outdoor plants and covered grow structures at **4009 E. Emerson Road, Acampo, California (PROPERTY 4)** and **25512 N. Highway 99, Acampo, California (PROPERTY 3)**. They also documented the apparent grow operations located in the rural properties purchased by GOMEZ in Calaveras County in 2017, and observed that currently there were numerous apparent marijuana plants visible at the property at **608 Smitty Lane, West Point, California**

(PROPERTY 5) which were yet to be harvested but that at **2820 Liberty Hill Road, Mokelumne Hill, California (PROPERTY 6)** the majority of the visible plants had apparently been harvested and only a few were left, although the growing containers and lines were clearly visible.  Photos of these locations and these plants are attached.

28. When agents flew over the property **12989 E. Diamond Lane, Lodi, California (PROPERTY 1)** where the CS had stated GOMEZ stored large amounts of methamphetamine and harvested marijuana and where the **North Trail Trailer** located at TEJEDA-GUTIERREZ's property was destined in order to be unloaded, they observed and photographed what appeared upon my examination to be the exact same **North Trail Trailer**.  I noted that all the doors, windows, compartments, structures, brand markings and red/gray/black trim line locations exactly matched. Agents also observed and photographed an individual with a truck and tools in the bed of the truck accessing this trailer.  I believe that it is highly likely that the reason this trailer was transported in the intervening seven days from TEJEDA-GUTIERREZ's property in Walnut Grove the forty miles to GOMEZ's rural property at the end of E. Diamond Lane where the CS stated it was originally destined in order to be off-loaded was because the original remaining amount from the 200 pounds of methamphetamine not located by agents during the execution of the search warrant was secreted in the structure of the trailer and it is now currently at **12989 E. Diamond Lane, Lodi, California  (PROPERTY 1)** where the methamphetamine is being removed.  I also learned in the intervening time that GOMEZ was listed as the operator of an auto-body shop business in the past in Lodi and has the requisite expertise and tools to access and/or remove any items possibly welded or secreted within such a conveyance.  The following is a comparison picture of the trailer now currently at GOMEZ's property:



***Training and Experience Regarding Drug Trafficking and Drug Traffickers***

29. As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions.  Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers.  It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their control.  It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live.  It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time.

30. Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically traffickers keep records of those registrations and transactions in their residence.

31. I have learned that large-scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business.  It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of

10

value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances in their residence or in the areas under their control.

32. In my experience, traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Such firearms are used by drug violators to protect their illicit drug trafficking operations, and themselves against law enforcement and other drug violators because the illicit drug trade is an inherently dangerous illegal activity involving large amounts of valuable contraband and drug proceeds. Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

33. In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control and which they have free and ready access to, drugs, including but not limited to in this case, methamphetamine and marijuana, which they intend to distribute. It is my experience that these drug traffickers commonly utilize these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

34. In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product. Such traffickers often maintain photographs and/or videotapes at their residence or in the areas under their control.

35. In my experience, large scale traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth and passports which are obtained by the traffickers and utilized in an effort to prevent law enforcement identification of the traffickers and their drug trafficking activities.

36. In my experience, drug traffickers often utilize vehicles in which to transport and distribute controlled substances in facilitation of their trafficking activities. It has also been my experience that traffickers will also utilize vehicles as locations in which to store controlled substances prior to distribution. During prior investigations, I have observed that drug traffickers will often utilize vehicles registered in the names of individuals other than themselves in an effort to avoid detection by law enforcement.

37. In addition, these traffickers tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by utilizing bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" the proceeds derived from the distribution of controlled substances.

38. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, Commercial Ocean and private vessels as well as common carrier(s).

39. Individuals involved in the distribution of methamphetamine and marijuana often make, or cause to be made, pictures, videos, movies, compact discs, floppy discs, or other such items which are or contain photographic or digital images in order to memorialize their methamphetamine distribution, use, possession, or any other activities surrounding their methamphetamine and marijuana trafficking activities, and that such items often identify co-conspirators in their methamphetamine and marijuana trafficking activities.

40. It has been my experience in the past, and particularly in this case, that when suspects use mobile telephones to communicate with cooperating individuals or undercover agents to set up the methamphetamine and marijuana deals, records relating to these activities will be found stored in the cellular telephone. And, as relevant to this case, the drug traffickers in this case have made extensive use of text messaging to communicate about his ongoing drug trafficking.

41. I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message. Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones. Mobile telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business. Mobile telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user. The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate. Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer. Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity. Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime. Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

42. As described above and in **Attachment A**, this Affidavit seeks permission to search and seize things that are related to the ongoing methamphetamine and marijuana conspiracy between GOMEZ and his associates, in whatever form such things are stored. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

43. It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment B** are items most often associated with the distribution of controlled substances, including methamphetamine and marijuana as well as the proceeds from such illegal operations.

44. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of this investigation. This Affidavit is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but, instead, are facts that I believe support a finding of probable cause to search the requested locations.

45. Based on my experience and training, and after consulting with other law enforcement officers experienced in drug investigations, I know that individuals involved in drug dealing often maintain at their residences, vehicles, and their persons the items described in **Attachment B**. Individuals involved in drug dealing also often maintain paraphernalia for packaging, weighing, cutting, testing, distributing, and identifying controlled substances. Therefore, I am requesting authority to seize all the items listed in **Attachment B** to this Affidavit and incorporated here by reference.

### Conclusion

46. The facts set forth in this Affidavit demonstrate probable cause to believe that the locations listed in **Attachment A** to this Affidavit contains evidence of a crime, contraband, fruits of a crime, and other items illegally possessed, property designed for use, intended for use, or used in committing a crime, specifically, **Fidel GOMEZ Jr. and his co-conspirators** and their ongoing collective effort to distribute and possess with intent to distribute methamphetamine and marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1).

47. I respectfully request authority to search:

1. **12989 E. Diamond Lane, Lodi, California; APN San Joaquin County #065-030-02 (PROPERTY 1);**

13

2.  3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31 (PROPERTY 2);

3.  25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38 (PROPERTY 3);

4.  4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007 (PROPERTY 4);

5.  608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039 (PROPERTY 5);

6.  2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012 (PROPERTY 6);

7.  A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California; and

8.  The person of Fidel GOMEZ Jr., DOB: **-**-1976, California Driver's License #****9930.

[*Continued on the next page.*]

14

48. Finally, I respectfully request that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant.  I believe that sealing these documents is necessary because the items and information to be seized are relevant to an ongoing investigation into criminal activities by the Defendant and his coconspirators.  Based upon my training and experience, I have learned that criminals actively search for criminal affidavits and search warrants over the internet, and disseminate them to other criminals as they deem appropriate, *i.e.*, post them publicly online.  Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness, as well as endanger the safety of agents serving the warrant requested.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

Brian Nehring, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me on the 31st day of October 2018

Edmund F. Brennan
United States Magistrate Judge

Approved as to form:

Cameron L. Desmond
Assistant U.S. Attorney

**Attachment A**
**Locations to be Searched**

1.   **12989 E. Diamond Lane, Lodi, California;  APN San Joaquin County #065-030-02, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

2.   **3522 E. Barron Road, Lodi, California; APN San Joaquin County #005-100-31, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

1

3.  **25512 N Highway 99, Acampo, California; APN San Joaquin County #005-09-38, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

4.  **4009 E. Emerson Rd., Acampo, California; APN San Joaquin County #005-15-007, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

5.   **608 Smitty Lane, West Point, California; APN Calaveras County #008-025-039, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

6.   **2820 Liberty Hill Road, Mokelumne Hill, California; APN Calaveras County #014-030-012, photograph below:**



and all other outbuildings, sheds, storage facilities, and trailers on the property.

7.  A North Trail Trailer located on the property of 12989 E. Diamond Lane, Lodi, California  (PROPERTY 1), photograph below:



8.  The person of Fidel GOMEZ Jr., DOB: **-**-1976, California Driver's License #****9930;



**Attachment B**
**Items to be Seized**

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by GOMEZ and his co-conspirators:

-      Title 21 U.S.C. Sections 846 and 841(a)(1) – Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine and Marijuana.

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1.      Controlled substances, methamphetamine and marijuana, or items frequently used to distribute methamphetamine and marijuana, or items containing residue from the distribution of methamphetamine and marijuana; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.      United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine and marijuana, from GOMEZ during in this investigation;

3.      Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.      Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1);

5.      Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6.      Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.    Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.    Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.    Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.   Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances;

11.   Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records; and

12.   All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with GOMEZ during execution of the warrant. This authority to search such mobile telephones includes the following within each mobile telephone:

    A.    Incoming call history;
    B.    Outgoing call history;
    C.    Missed call history;
    D.    Outgoing text messages;
    E.    Incoming text messages;
    F.    Draft text messages;
    G.    Telephone book;
    H.    Data screen or file identifying the telephone number associated with the mobile telephone searched;
    I.     Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;
    J.     Voicemail;
    K.    User-entered messages (such as to-do lists);
    L.    Photographs; and
    M.    Any passwords used to access the electronic data described above.

13. All bulk marijuana located on the scene may be destroyed except for representative samples taken in accordance with normal DEA policy.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>Black/grey Apple iPhone with IMEI #<br>356727087844443; Black Samsung SM-J337P<br>cellphone with DEC # 089189376902627335; and a<br>Red/black Ferrari Motorola cellphone with IMEI #<br>102100329867020, CURRENTLY LOCATED AT<br>4328 Watt Avenue, Sacramento, California | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.   2:22-sw-0021 JDP |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ January 24, 2022 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     January 10, 2022 3:25 p.m.          _____
                                                                                                      *Judge's signature*

City and state:     Sacramento, California          Jeremy D. Peterson, U.S. Magistrate Judge
                                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** |
|---|

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
Signature of Judge                                                                         Date

## **ATTACHMENT A**

The properties to be searched are a Black/grey Apple iPhone with IMEI # 356727087844443; Black Samsung SM-J337P cellphone with DEC # 089189376902627335; and a Red/black Ferrari Motorola cellphone with IMEI # 102100329867020.  The Devices are currently located at 4328 Watt Avenue, Sacramento, California.


This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Devices described in Attachment A that relate to violations of 21 U.S.C. §841(a)(1) and 846 and involve Fidel Gomez Jr., between January 1, 2017 and November 2, 2018, including:

     a.    All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with GOMEZ Jr. during execution of the warrant.

     b.    lists of customers and related identifying information;

     c.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

     d.    any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

     e.    any information recording GOMEZ Jr.'s schedule or travel from January 1, 2017 to November 2, 2018;

     f.    all bank records, checks, credit card bills, account information, and other financial records.

     g.    Incoming call history;

     h.    Outgoing call history;

     i.    Missed call history;

     j.    Outgoing text messages;

     k.    Incoming text messages;

     l.    Draft text messages;

     m.    Telephone book;

     n.    Data screen or file identifying the telephone number associated with the mobile telephone searched;

     o.    Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

     p.    Voicemail;

q.  User-entered messages (such as to-do lists);

r.  Photographs;

s.  Any passwords used to access the electronic data described above; and

t.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;